Gregory J. KESSENICH, Pauline C. Kessenich, William H. Kessenich, Rose Mary C. Kessenich Pro Se and as Trustee of Thomas G. Kessenich, Christopher J. Kessenich

v.

The UNITED STATES.

No. 127-55.

United States Court of Claims.

Nov. 8, 1955.

Irving M. Tullar, Washington, D. C., for plaintiffs. Edward B. Beale and Harris C. Lockwood, Washington, D. C., were on the brief.

Bernard Wohlfert, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiffs sue upon an express contract which, they say, was embodied in certain writings which they have attached to their petition, and, in the alternative, upon an implied contract based upon a statute and the conduct of the parties. The Government by its motion asserts that the plaintiffs' petition fails to state a cause of action. We summarize the facts recited in the plaintiffs' petition, so far as they are pertinent to the motion.

In 1940 the Government initiated action to recruit American inventive genius and to stimulate inventive effort by inviting the submission of inventions to the Government so that it could determine their military or naval value. In August 1941 Gregory J. Kessenich, inventor of a rocket projectile of the Bazooka type, confidentially disclosed a drawing of the rocket to officials of the Ordnance Department. This was immediately after the invention was conceived and before the filing of an application for a patent. The Rocket Branch of the Ordnance Department developed the invention in secrecy, and classified it as secret. That having been done, the inventor could not disclose his invention to others, nor could he file an application for a patent in a normal manner.

Kessenich, the inventor, was employed in the Patent Section of the Office of the Chief of Ordnance at least as early as December 1940, and was called to active duty as an officer in September 1941. In 1943, while serving as an artillery officer, he was informed that the Chief of Ordnance had made a general announcement concerning the Bazooka Rocket. Kessenich feared that further publication might follow, and might result in the creation of a statutory bar against his ever obtaining a patent on his invention. Under R.S. § 4894 as amended, 35 U.S.C. (1946 Ed.) § 37,[1] the War Department can request a three-year suspension of action on an application for a patent if the application is the property of the United States. To satisfy this requirement Kessenich prepared an application for a patent and immediately assigned all his right, title and interest in the application to the Secretary of War, to hold in trust until such time as the trustee should in his discretion determine that the need for exclusive control by the United States should cease, at which time the trustee would reconvey the application, or any patent which had been granted thereon, to Kessenich.

The assignment stated that the Government desired that the application should be placed under R.S. § 4894. This

---

**1.** Now 35 U.S.C.A. §§ 133, 267.

section is generally known as the Three Year Statute. The assignment included an agreement that, upon reconveyance, Kessenich would grant the Government a royalty-free license to use the invention. The assignment recited that it was made in consideration of the "protection guaranteed by Sec. 7 of the Lend-Lease Act [22 U.S.C.A. § 416] and the right to tender the invention as provided for in the act of October 6, 1917 * * *."

On the request of the Secretary of War the Commissioner of Patents on April 18, 1944, placed the application under the Three Year Statute and caused the assignment to be recorded in the U. S. Secret Register of the Patent Office. On October 22, 1947, the Secretary of the Army requested the Commissioner of Patents to place the application under Rule 77 of the Patent Office Rules of Practice, 35 U.S.C.A.Appendix, and to suspend action for five years. The Commissioner of Patents did so on November 6.

Kessenich's assignment in trust was terminated on June 2, 1950, by reassignment by the Secretary of the Army to Kessenich. The assignment and reassignment were then recorded in the Public Register of Assignments of the Patent Office.

The plaintiff Gregory J. Kessenich on November 13, 1951, assigned to the other plaintiffs fractional interests in the application for the patent. The patent was issued on December 18, 1951.

In 1952 Gregory J. Kessenich presented to the Army a proposal of settlement and compromise of his claim for compensation for the use of his invention. On May 13, 1954, the Army rejected the proposal on the ground, *inter alia*, that no contractual obligation ever existed on the part of the Government to compensate Kessenich for the use of his invention before or after the issuance of the patent.

The plaintiffs readily concede that the provision contained in the assignment to the Secretary, and the Secretary's reassignment, for the Government to have a royalty-free license to use the invention, forecloses any claim for use after June 2, 1950, the date of the reassignment. But they urge that during the time that the Government owned the application, in trust, it was under an obligation to pay compensation, if a patent should be ultimately issued on the application. They say in their brief:

"The original Assignment contemplated the determination, upon issuance of the patent, of compensation for the use of the invention to the same degree or extent as provided for in the Act of October 6, 1917, as amended. The Defendant expected to pay for the use of the Rocket Projectile, and Gregory J. Kessenich expected to receive compensation for the use of his invention."

It will be remembered that Kessenich's assignment to the Secretary recited as a consideration for it, "the right to tender the invention as provided for in the Act of October 6, 1917." The plaintiffs say that this means that he was to have the rights which one would have who made a tender of his invention to the Government under the 1917 Act. They say that, under that Act, compensation was payable to the inventor if and when a patent issued. The Government says that the 1917 Act, 40 Stat. 394, C. 95, 35 U.S.C. (1946 Ed.) § 42,[2] which it calls the "original" secrecy law, merely extended the accounting period from the date of issue of the patent back to the date of first use, but left to the Government all the defenses which it had under the Act of June 25, 1910, as amended, 28 U.S.C. § 1498. The Government cites Zeidler v. United States, 61 Ct.Cl. 537, 553, certiorari denied 273 U. S. 724, 47 S.Ct. 236, 71 L.Ed. 860, to this effect. It then points out that 28 U.S.C. (1946 Ed.Supp. IV) § 1498 provides:

"This section shall not confer a right of action on any patentee who,

2. Now 35 U.S.C.A. § 181.

when he makes such a claim, is in the employment or service of the United States, or any assignee of such patentee, and shall not apply to any device discovered or invented by an employee during the time of such employment or service."

The plaintiffs say that the above quoted provision is not applicable to a situation in which the claim for compensation is not based upon the 1910 Act but is based upon a contract by the Government to pay for the use of the invention. They cite 19 Dec.Compt.Treas. 815 so holding. They quote the Attorney General's report to the President entitled "Investigation of Government Patent Practices and Policies", Vol. III, p. 178, where he says:

"As a result, Government employees have been left in the same position, vis-a-vis the Government, as prior private patentees prior to the 1910 Act, without a remedy against the United States for the use of their patented inventions unless they could establish an express or an implied contract by the Government therefor."

We assume that the plaintiffs are right and that the statement in the 1910 Act about inventions of Government employees merely denies to them the statutory right to compensation, but does not forbid the Government from contracting with its employees for compensation.

We must now determine whether there can be spelled out of Gregory J. Kessenich's assignment to the Secretary of War, and the Secretary's reassignment, an express contract to pay compensation to Kessenich. The express provision that after the reassignment the Government should have a royalty-free license makes one wonder why the Government would agree to pay compensation while it was the owner of the patent, but not pay compensation after title was returned to the inventor. The documents say nothing directly on the point of compensation while title was in the Government. The plaintiffs point to the statement that consideration for Kessenich's assignment was "the right to tender the invention as provided for in the Act of October 6, 1917." Being permitted to tender the invention under that Act, and thus have the accounting period carried back to the first use, no matter how long the granting of the patent was delayed, was, in a way, an advantage to Kessenich. If the invented device had been of a kind likely to be used by private industry, that would have been a great advantage. The invention being a weapon, likely to be made only by or for the Government, the advantage to Kessenich was slight. The real consideration, though not recited, was that the Government had developed the invention, and was about to process the application through the Patent Office without expense to Kessenich, and ultimately reassign the patent to him. If consideration was necessary, it was present, although there was probably a large element of patriotic donation in the transaction.

■ Looking at the writings as a whole, and drawing from them the inferences which seem reasonable, we cannot find in them an express contract of the Government to pay compensation for the use of the invention during the time that the Government held title to it.

■ The plaintiffs assert that tender of the invention, and its acceptance and use, created, under the provisions of the Act of October 6, 1917, the Secrecy Statute, an implied contract to pay compensation. There was in fact no secrecy order issued by the Commissioner of Patents pursuant to the Secrecy Statute and there was no formal tender of the application to the Government. Even if we assume that the placing of the application under the Three Year Statute, R.S. 4894, was the equivalent of a secrecy order, and that Kessenich's assignment in trust to the Government was the equivalent of the tender required by the Secrecy Statute, we suppose that the claimed right to compensation in such a case, if it existed, would be a statutory, and not a contractual, right. As to this ground of recovery, the plaintiffs do

not rely upon any promise, express or implied in fact, but only upon the statute. Considering it as a statutory right, it seems to founder upon the provision of the 1910 Act denying the right of statutory compensation to Government employee inventors. Zeidler v. United States, supra. And in addition to this impediment, our construction of the written assignments as intending to provide that the Government might use the invention without compensation would negative any right to statutory compensation. We are not willing to carry the assumptions of equivalence above suggested to the point where they, in effect, contradict and subvert the intention of the parties, as we gather that intention from their writings and conduct.

The Government's motion to dismiss the plaintiffs' petition is granted, and plaintiffs' petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.